1819.

Ghiselin & Worthington
vs
Fergusson

---

JUNE.

## GHISELIN & WORTHINGTON vs. FERGUSSON.

W W. a trustee appointed by the court of chancery for selling the real estate of A C, sold that part of it called B, to J. A, and took his bond for the payment of the money, with R F his surety. and it was understood that the land was not to be conveyed until the purchase money was paid. J A soon after sold B to R G, for the sum he had contracted to pay the trustee for it; and to accommodate J A, R G, with a full knowledge that the trustee had not been satisfied, went on to pay J A the sum he engaged to pay for the land, and received from him an assignment of his claim against A C's estate, which at first was supposed to be greatly

APPEAL from the Court of Chancery. The bill states that *J. and C. Allstan,* with other creditors of *A. Contee,* deceased, filed their bill against his heirs for a sale of his real estate for payment of his debts, and that a decree passed for such sale. That *Worthington,* one of the defendants, (now one of the appellants,) was appointed trustee to make the sale. That the trustee sold the whole of the real estate amounting to $7005. That *J.* and *C. Allstan,* being creditors of *Contee,* J. *Allstan* purchased a large part of said estate, viz. *Brookfield,* containing 400 acres, for the sum of $5,100. That *Fergusson,* the complainant, (now appellee,) became *Allstan's* security to the trustee. That soon after the sale, *Allstan* assigned to *Ghiselin* (the other defendant and appellant,) his contract of purchase of *Brookfield.* That *Allstan* being in want of money, prevailed on *Ghiselin* to advance him money on account of his purchase, and to take an assignment of his claim against *Contee,* to be applied, as far as it would go, in payment for said land, which *Ghiselin* assented to, took the assignment of said claim, and advanced money to *Allstan.* That it appeared by the

more than sufficient to discharge all the purchases J A had made of the trustee. Upon the final settlement of the affairs of A C, his estate proved insolvent, and the creditors being put to a dividend, the sum to be received by R G on J A's assignment, was not adequate to the payment of the purchase money due the trustee, who withheld the conveyance from R G to whom he was ordered by the chancellor to convey B on the whole purchase money being paid and sued R F as surety of J A on the bond before mentioned. A judgment was obtained against R F for a balance of the purchase money, which on his filing his bill he brought into chancery, and claimed to have the amount paid by R G who had purchased of J A with notice—*Decreed,* that the amount, so recovered against R F should be brought into court by R G by a limited time, to be paid to R F, or that the tract of land called B, or as much as was necessary, should be sold to raise the said sum and the interest.

The vendor of a real estate, without deed, has an equitable lien on the land sold, for the payment of the purchase money, into whatever hands it may pass, *with notice* that the contract of sale has not been complied with by the vendee; and the purchaser of an equitable estate with notice, is liable to the same equity and is bound to do that which the person he represents would be bound to do.

When a purchaser of a trustee sells to another, he cannot place him in a more eligible situation than he has himself. He cannot, by any act of his, place his surety for the purchase money in a worse situation than he would have been in, if the purchaser had not so sold.

A surety paying the debt of his principal, shall be considered to stand in the place of the creditor for any purpose to answer the ends of justice; and he is entitled to an assignment of the bond of his principal that he may pursue his remedy against the principal. And if the equitable estate in the land purchased of the principal, and for which the surety became answerable for the purchase money, was about to be sold for the payment of debts, the surety would so far represent the trustee who sold the land, as to have a decided preference over all the other creditors of the principal. He would also repr ent him so as to obtain a reimbursement of a person purchasing from his principal, for the money the surety has paid the trustee

auditor's report that *Contee's* estate was insolvent, and that *Allstan* was only entitled to a dividend, much less than the amount of his claim proved before the auditor. That *Ghiselin* paid to *Allstan* a considerable sum more than his dividend, who has retained the same in his hands, and has not paid the same to the trustee. That suit has been brought against complainant, as *Allstan's* security, and judgment has been recovered for the balance of the purchase money due upon said sale. That if said balance is recovered from him, and the land conveyed to *Ghiselin*, he *Ghiselin* will have received credit for a considerable sum paid to *Allstan* in his own money, which ought to have been paid to the trustee, and which is a lien on the land purchased. The bill prays that *Ghiselin* be decreed to pay such sum as may be due, after deducting *Allstan's* dividend, and such other dividends as he may have been authorised to receive, and such sums as he may have paid to the trustee, or that the land be sold to indemnify complainant as *Allstan's* security. On petition of complainant, the money recovered against him was ordered to be paid into court, and an injunction issued to stay execution on the judgment recovered against him by the trustee. The answer of *Ghiselin* admits the decree for the sale of the land; that he purchased from *Allstan*, and took an assignment of his claim; that he made sundry payments to *Allstan* and that when he made the last payment, *Allstan's* dividend was not finally ascertained. That when it was finally adjusted, the amount, added to the payments that had been made to the trustee, left a balance due for the land he purchased from *Allstan* of $448 22, with interest, as is set forth in the answer of the trustee, which sum of money, although paid by *Ghiselin* to *Allstan*, still remains due to the trustee, as he informed *Ghiselin*.

Kilty, Chancellor, (July Term 1816,) *Decreed*, that unless the defendant, *Ghiselin*, shall before the 23d of October next bring into court, to be paid to the complainant, the sum of $448 22, with interest from the 17th of June 1811, and costs, the land in the proceedings mentioned shall be sold, &c. From this decree the defendants appealed to this court.

The cause was argued before Chase, Ch. J. and Earle and Martin, J.

*Martin*, (Attorney General,) and *Stephen*, for the Appellants, contended, 1. That the surety of *Allstan* cannot avail himself, on payment of the balance of the purchase money, of the equitable lien existing between vendor and vendee. 2. That *Allstan* ought to have been made a party, unless stated by the complainant to have been *insolvent*, because if he was *able to reimburse* his surety, there was no occasion to resort to the land in the hands of *Ghiselin*.

1819.

Ghiselin & Worthington
vs
Fergusson

1819.

Ghiselin & Worthington
vs
Fergusson

On the *first point* they referred to *Duvall vs. Bibb*, 4 *Hen. & Munf.* 113. *Pollexfin vs. Moore*, 3 *Atk.* 272; and *Sugd.* 358.

*Brewer*, and *Brewer, Jr.* for the Appellee, cited 2 *Madd. Chan.* 105, 507. *Taylor vs. Stibbert*, 2 *Ves. jr.* 437. *Freeland vs. Gantt and Childs*, in the court of chancery. *Ex parte Turner*, 3 *Ves.* 243; and *Latouche vs. Dunsany*, 1 *Sch. & Lef.* 162.

MARTIN, J. delivered the opinion of the court. The court has considered the arguments of the counsel in this case, and examined the record carefully. The case appears to be this,—*W. G. D. Worthington*, the trustee for selling the real estate of *Alexander Contee*, deceased, sold that part of it called *Brookfield* to *James Allstan* for $5,100, and took the bond of the purchaser for the payment of the purchase money, with *Robert Fergusson* his security; and it was understood that the land was not to be conveyed until the purchase money was paid. *James Allstan* soon after sold *Brookfield* to Doctor *Reverdy Ghiselin* for the sum he had contracted to pay the trustee for it; and to accommodate *Allstan*, *Ghiselin*, with a full knowledge that the trustee had not been satisfied, went on to pay *James Allstan* the sum he engaged to pay for the land, and received from him an assignment of his claim against *Alexander Contee's* estate, which at first was supposed to be greatly more than sufficient to discharge all the purchases *James Allstan* had made of the trustee. When *Ghiselin* made the last payment to *James Allstan*, whose circumstances were on the decline, he took from him a bond with security to indemnify him in the payment. Upon the final settlement of the affairs of *Alexander Contee*, his estate proved insolvent, and the creditors being put to a dividend, the sum to be received by Doctor *Ghiselin* on *James Allstan's* assignment, was not adequate to the payment of the purchase money due the trustee, who withheld the conveyance from *Ghiselin*, to whom he was ordered by the chancellor to convey. *Brookfield* on the whole purchase money being paid, and sued *Robert Fergusson*, as security of *James Allstan* in the bond passed as aforesaid. A judgment was obtained against *Robert Fergusson* for a balance of the purchase money, which he brought into chancery, and claimed to have the amount paid by Doctor *Ghiselin*, who had purchased of *James Allstan* with notice. The chancellor decreed that the balance, (the sum of $448·22,) should be brought into court by *Ghiselin*, by a limited time, or that the tract called *Brookfield*, or as much as was necessary, should be sold to raise this sum, and the interest; and whether the chancellor was correct in this adjudication is the question for this court now to decide.

The vendor of a real estate, without deed, has unquestionably an equitable lien on the land sold, for the payment of the purchase money, into whatever hands it may pass,

1819.

Ghiselin & Worthington
vs
Fergusson

*with notice* that the contract of sale has not been complied with by the vendee; and the purchaser of an equitable estate *with notice*, is liable to the same equity, stands in the place of and is bound to do, that which the person he represents would be bound to do. 2 *Ves. Jun.* 439. In the case under consideration *Worthington*, the trustee, has an equitable lien on *Brookfield* which is in the possession of Doctor *Ghiselin* by purchase of *Allstan*, and *Ghiselin* who represents *Allstan* is liable to the same equity, and is bound to do, at least as far as the vendor is concerned, whatever *Allstan* would have been bound to do if he had not sold to *Ghiselin*. But it is contended that *Robert Fergusson* is not to be considered in the place of *Worthington*, the trustee, to obtain redress of Doctor *Ghiselin*; and it is asserted that no authority can be produced to support the position, that a person claiming under a vendee shall have the benefit of an equitable lien on the lands, in the hands of a purchaser *from* the vendee, although such purchaser be a purchaser with notice. Supposing that no express authority can be found to maintain this position, the inquiry may be made, is not *Fergusson's* case within the reason of those cases that have been cited on the argument and acknowledged to be the law? If Doctor *Ghiselin* stands in the place of *Allstan*, and is liable to the same equity, he is bound to do whatever *Allstan* would have been bound to do, if he had retained the tract called *Brookfield*. As far as the trustee is concerned, *Brookfield* is incontrovertibly so bound; and it is not perceived that any additional hardship would be imposed on him, by subjecting him to payment of the claims of *Fergusson*, who by his payment to the trustee has placed himself in his situation. Doctor *Ghiselin* purchased with a full knowledge that the purchase money on *Brookfield* would be exacted of him by the trustee, and it was his folly to part from it to *Allstan*, and his indiscretion ought not to prejudice others.

It seems to the court it would be a correct position to state, that a man cannot sell more than he has, and that when *Allstan* sold to Doctor *Ghiselin*, *with notice*, he could not place him in a more eligible situation than he occupied himself. Besides it would be strange if *Allstan*, by any act of his, could place his own security in a worse situation than he would have been in if the act had not been done.

It has been admitted by the counsel for the appellants, that if *Brookfield* had remained undisposed of in the hands of *Allstan*, and *Fergusson* had been compelled to pay the purchase money to the trustee, *Fergusson* would have a lien on the property to reimburse him the sum he had paid as security for *Allstan*. But it has been contended, the moment *Allstan* parted with his equitable interest to *Ghiselin*, that this lien ceased, and *Fergusson* was without a remedy. If this doctrine is correct, *Ghiselin* might retain the possession of the land without paying one cent of the purchase money, (unless that payment had been enforced by *Allstan*,) and *Fergusson*, the security of *Allstan*, be

compelled to pay the whole sum to the trustee, without indemnity. But again, suppose *Ghiselin*, with a knowledge of the transaction, and that the purchase money had not been paid to the trustee, had thought proper to pay the whole purchase money $5,100, to *Allstan*; that *Allstan* had fraudulently applied it to his own purposes, and did not pay it over to the trustee, and the trustee, by a suit on the bond, compelled *Fergusson* to pay the money to him, *Ghiselin* would then remain the undisturbed possessor of the land, *Allstan* would retain the $5100 paid to him by *Ghiselin*, and *Fergusson*, the innocent security, have to sustain the whole loss. Thus by the fraud of *Allstan*, and the indiscretion or connivance of *Ghiselin*, *Fergusson* would lose the benefit of that lien or security on the land given to him by law, as an inducement to enter into the bond, and *Allstan* retain the $5100 as the fruits of his fraud and injustice. A case too glaring to be countenanced by a court of equity.

It is admitted too, that for many purposes the security paying the debt of his principal shall be considered to stand in the place of the creditor, and if he can be so placed for any one purpose to answer the ends of justice, the court cannot understand why he may not be so considered for every purpose where the same ends are in view. *Robert Fergusson* is entitled to an assignment of the bond of his principal at the hands of *Worthington*, the trustee, that he may pursue his remedy against *Allstan* and his estate. If the equitable estate in *Brookfield* yet remained in *Allstan*, and his heirs, and it was about to be sold for the payment of debts, it is conceded that *Robert Fergusson* would so far represent *Worthington*, the trustee, as to have a decided preference over all the other creditors of *Allstan*. Why then should he not represent him in the case before us to obtain a reimbursement of Doctor *Ghiselin* for the money he has paid the trustee? It appears to the court to be equitable and just that he should; and we do therefore entirely concur in the judgment of the chancellor, and are of opinion that his decree in this case be affirmed.

CHASE, Ch. J. I am satisfied, on considering all the circumstances attendant on this case, that *Robert Fergusson* the security for *James Allstan*, who purchased of *Worthington*, has no lien on the land called *Brookfield* purchased by Doctor *Ghiselin*. In general the lien is confined to the vendor and vendee, and those claiming under them, and cannot be extended in equity to a third person. *James Allstan*, the first purchaser of *Brookfield* from the trustee, could not obtain a conveyance from the trustee until the whole purchase money was paid, nor could Doctor *Ghiselin*, his assignee. Doctor *Ghiselin*, on complying with his contract with *James Allstan*, (and it is admitted he has paid the whole purchase money,) had a right to call on *James Allstan*, and his security, *Robert Fergusson*, to pay the trustee pursuant to their engagement. *James Allstan*

has transferred all his interest in *Brookfield* to Doctor *Ghiselin*, and has no lien on it. *James Allstan*, and his security, were bound to pay the trustee, and have done so. The security, by paying part of the money to the trustee, cannot stand in the shoes or place of the trustee, nor could he acquire any lien on *Brookfield* by making such payment. The right of the security cannot be preferable to that of his principal. *James Allstan* and his security entered into the bond to the trustee to secure the payment of the purchase money, and prior to the assignment made by *James Allstan* to Doctor *Ghiselin*, who knew there was sufficient security given to the trustee for payment of the purchase money before he took the assignment. *Robert Fergusson*, the security of *James Allstan*, never had any interest in *Brookfield*, whereby a lien on it could be created. By becoming security he made himself responsible for the purchase money, and for what he paid he has a claim on *James Allstan*, and his estate, for indemnification, but no lien on *Brookfield*.

I am of opinion, that the decree of the chancellor ought to be reversed, and a decree passed directing the trustee to execute a deed of conveyance to Doctor *Ghiselin* for *Brookfield*.

### DECREE AFFIRMED.