Bland, Chancellor
This case standing ready for hearing, and having been submitted on the notes of the plaintiffs’ solicitor, the proceedings were read and considered.
The circumstances and facts are these. Joseph Selby died intestate, seized of a certain tract of land which descended to his *520 children. One of whom, Jemima, with her husband John Cross, and others, filed a bill in this court, alleging, that the estate, which had so descended to them, would not admit of partition without loss ; and therefore prayed, that it might be sold and the proceeds divided among them. It was decreed accordingly, on the 12th of December 1816 ; and Thomas Sellman was appointed trustee to make the sale. In pursuance of which authority he reported, that he had sold the property to John Cross, who had given bond as required for the purchase money; and, on the 29th January 1817, an prder was passed to confirm the sale unless cause shewn. On the 8th of March following John Cross, the purchaser, died intestate, and without having paid the purchase money, leaving three minor children, his heirs, to whom the real estate so purchased descended.
The minor heirs of Cross, by their next friend, petitioned the legislature for a special act, authorizing the sale of the interest so purchased by their father, in order to save the fee simple estate which had descended to them, and also the personal property, agricultural implements, &c., which were necessary for their support : alleging, that the Chancellor, on application, had declared it to be his opinion, that he had no authority to decree in such case : that is, as is presumed, that he had no authority to decree, at their instance, that the assets should be so marshalled; and upon this ground, as it seems, the legislature, on the 20th of January 1818, passed an act,(a) authorizing Thomas Sellman as trustee to sell, at public sale, upon such terms as the Chancellor should direct, all the equitable interest in the real estate which had so descended to the minor children of the late John Cross ; and, from the proceeds, to pay the purchase money; and the balance to be disposed of as the Chancellor should direct; or to pass to those childz'en as realty; and, if Sellman the trustee should die, the Chancellor was authorized to appoint a successor.
In pursuance of this act of Asseznbly, Sellman, on the 27th of the same month, filed his petition to the Chancellor, who, on the same day, passed a decree accordingly specifying the terms of sale. Upon which Sellman, on the 6th of October 1818, made a sale of the equitable interest of the children of Cross to Benjamin Armiger, by whom a part of the purchase money was paid, and the z’esidue secured by bonds and a note with suz'ety, which were *521 made payable “ to Thomas Sellman trustee for the sale of the real estate of John Cross deceased.” After which, and before he had reported the sale, Sellman died, and James Iglehart jun’r. was appointed to succeed him as trustee; who made a report of the sale, and that he had the money received and also the bonds taken then in his hands. This sale was finally ratified on the 19th of March 1819; and, by an order of the 28th of April following, the proceeds were made payable to this same James Iglehart, who was also appointed trustee in the place of Sellman under the decree of the 12th of December 1816, leaving a balance still due from the late John Cross’s estate to the late Selby’s estate, as shewn by the statement taken from the report of the late Thomas Sellman, who had made and reported a sale under the decree in that case, which had not been finally ratified until the 27th of January 1818.
In which suit, for a partition of the late Joseph Selby’s estate, the auditor, on the 1st of April 1818, made and reported a statement of a distribution of the proceeds of sale, allotting one share of the estate of the late Joseph Selby which had been sold to John Cross, to the said John and Jemima his wife, which was ratified on the same day. On the 29th of April 1819 Iglehart the trustee, by petition, applied to be directed as to whom the share awarded to John and Jemima was to be paid. Upon which the Chancellor passed the following order.
“ 1st May, 1819. — Kilty, Chancellor. — On considering the within application, I am of opinion, that the part of the proceeds of Joseph Selby’s estate, allotted to John Cross and Jemima his wife, is to be paid to Jemima Cross, who has survived John Cross, inasmuch as it was not received, or assigned, or applied by him in his lifetime. Having been the purchaser, if he had settled up the other parts, he might have settled his proportion with the trustee by discount, or possibly might have settled that part only with him. The case must now be considered, as to her right, in the same manner as if any other person had been the purchaser, (z) But the trustee, in paying the parts allotted under the orders of the 1st and 29th of April 1819, must pay only a rate or proportion to each, according to the net sum received from the sale of J. Cross’s real estate, until he recovers the balance on his bond. The present trustee is allowed one-third of the commissions of 182 dollars, paying two-thirds to the representatives of T. Sellman.”
*522 Two of the bonds which had been taken from Armiger, after several partial payments on them, were, on the 28th of December 1824, by James Iglehart, as trustee for the sale of the real estate of John Cross deceased, assigned to John S. Selby one of the heirs of the late Joseph Selby, and to whom a portion of his estate had been awarded by the auditor’s report, and the order thereon of the 1st of April 1818. And, by Selby, these bonds were assigned to Robert S. Bryan ; and, by him assigned to William McParlan. Nicholas J. Watkins and John S. Watkins undertook to guaranty the payment of these bonds. Upon all which this-bill was filed.
It was urged, that the equitable lien held by the court, arising from the sale under its decree, or by the late Thomas Sellman, and his successor, as trustee under the act of assembly, was assignable-in its nature; that it has been assigned; that it was necessarily associated with the bonds given by the purchaser Armiger, and his sureties, and virtually passed along with the assignment of them from Iglehart to Selby, to Bryan and to McParlan.
An equitable lien is one of a very peculiar character. It is not like the common law lien of factors, innkeepers and others, associated with and entirely dependent upon the actual possession of the property on which it is a tie ; it is not like a general judicial lien, which springs into existence in favour of a party who obtains a judgment, which enables him to take the lands of the defendant-in execution, and continues as an incident to such unsatisfied judgment to which the statute has expressly made all the lands of the-defendant liable; it is not like the lien of the State upon the property of its debtor, founded as well on positive enactment as on-principles of common law, by which the interests of individuals are postponed in favour of those of the public; it is not precisely of the nature of the lien given by the civil law to those called privileged creditors, such as nautical salvors, material men, &c.; nor is it altogether like a common mortgage, although it operates and is treated, in many respects, as a mortgage. It differs from all these in this, that, if it exists at all, it must originate with, and as an incident of the contract of purchase itself; that it is not always a part, or principle of the contract as in the case of a lien given by the civil law, to privileged creditors; that it is not founded on any express stipulation; that it is not dependent on having possession ; that it is not deduced from any statute; and that it does not rest on any general principles of common law.
This doctrine in relation to equitable liens, it is said, has been *523 probably derived from the civil law as to goods,(b) and it seems, that such a lien upon goods is a personal right which cannot be transferred to another, (c) But in whatever way it may have originated, it is now well settled, that an equitable lien arises from the j principle of equity, that the purchaser of real estate ought not to be allowed to hold it, as his own, until the vendor has been fully satisfied; and that it is a vendor's security and privilege. It is indispensably necessary to the existence of such a lien, that the parties should stand in the relation towards each other of vendor and vendee of real estate, the purchase money of which has not been fully paid. If that relationship is, in any manner whatever, put off, altered, or relinquished, an equitable lien either cannot arise, or will be destroyed. The pure relationship of creditor and debtor, or of borrower and lender, is incompatible with the existence..... of an equitable lien, excludes, or extinguishes it. In a contract of loan, the relation of creditor and debtor attaches independently of any securities for the payment of the money, such as a mortgage, bond, or note: which, when given, are the mere accidental circumstances of a contract in all respects complete without them. The chose in action is assignable in its nature, in equity at least, independently of those evidences and securities of it. But in a purchase of real estate payment is an essential part of the contract; hence it is an established principle of equity, that the vendor holds a lien upon the estate to secure the payment of the purchase money; and this lien is an incident uniformly arising from, and associated with such a contract.(d) It exists in all cases, unless a manifest intention, that it should not exist, appears ;(e) and it continues until it has been, in some way, impliedly or positively waived; all which it lays upon the vendee to shew.(f)
In the case of a purchase of a real estate the equitable lien arises as an incident thereto, and can only exist together with it, as principal and incident. In the case of loan the debt is the principal, and the bond, note, or mortgage are only the accidents or incidents to it. In both cases the extinguishment of the principal destroys its incidents. A purchase may be made, or a debt may exist without an equitable lien, or a bond, note, or mortgage *524 as its incident. A bond, note, or mortgage may however be executed as being, in itself, the creator, evidence, and incident of a debt; but an equitable lien cannot be thus made and executed apart from, and independently of a contract of purchase, or as being, in itself, the evidence of a purchase. Hence, it is perfectly evident, that a bond, note, or mortgage may be, in itself, at once the principal and incident; it may create a debt, and thus establish the principal of which it is the evidence and incident; but an equitable lien is so purely an incident, that it cannot be called into existence in any other manner than as an attendant upon a contract of purchase; and when that is satisfied or substantially waived, the equitable lien is gone.
It is true, as a general rule, that the principal carries with it all its incidents, but not the reverse. Jlccessorium non ducit, sed sequitur suumprincipale.(g) And therefore if the debt be in any manner distinctly and legally assigned; the assignment carries with, it the bond, note, or mortgage as its incident; because the transfer of the money carries with it the mortgage interest in the land, and all other securities which were given for the purpose of assuring its payment. This may be done by parol notwithstanding the statute of frauds. So too, if it be the intent of the mortgagee to give the debt only, he may do so by a will not attested by three witnesses; and the legatee may in the name of the heir obtain, in equity, all the benefit of the mortgage : but if his intention was to devise it as land, then his will must be duly attested for that purpose. The reason of this is, that a gift, assignment, or bequest of the principal carries with it all its beneficial incidents. (h)
But an equitable lien is an encumbrance upon land, which can only be held by a vendor; and although assets may be marshalled, so as to put a vendor altogether upon his equitable lien, for the benefit of other creditors, yet no third person can, as assignee of the vendor, derive any benefit from such lien;(i) nor can it, like a bond or mortgage, be assigned; because it is not expressed in writing, or in any separate contract; but exists only as an inseparable equitable incident of the contract of purchase; and is raised by construction of equity, in favour of the vendor only. To allow it to pass by an assignment of the claim for the purchase *525 money; or by a transfer of the bonds, or notes, given as a security for the payment of the purchase money, would be of the most ruinous consequence to titles to real estates. It would completely break down the statute of frauds, and all the acts of Assembly requiring conveyances of lands to be recorded ; according to which acts no estate for above seven years in any land shall pass or take effect, unless the written conveyance, by which it is made, be within six months thereafter put upon record, and thus made accessible to all concerned. A common bond, or a mere promissory note passing with a blank endorsement from hand to hand, might carry with it an incumbrance upon a real estate of the most binding and extensive nature. Besides, if such assignable or negotiable instruments were permitted to carry with them any such equitable lien, aliens and others, incapable of directly taking any such ; estate, might thus acquire and hold a much larger interest in land t than is allowed by our law.(j) This certainly ought not to bq permitted; and there is no authority sanctioning any such principle. (k)
But where there has been a bond or promissory note given Tory the payment of the purchase money, which does not impair the equitable lien, the assignment of such security must operate as a tacit relinquishment of the equitable lien; because the assignee and vendee are thereby placed in the relationship of creditor and debtor; and the vendor having thus finally waived the right to enforce his equitable lien, it can never again be revived in his favour; unless his privilege as vendor has been kept up and continued by the holding of him answerable as assignor of the securities given for the payment of the purchase money.(l)
Although it is admitted, that no adjudged case can be found in the English books to sustain the position, that an equitable lien may be assigned, or that it virtually passes along with the assignment of the bonds given for the payment of the purchase money: yet it is said, that the principle has been sanctioned by the decisions of this court.
The case principally relied on is, that of Brewer and Mackubin v. Nicholls, 8th July 1824. In that case Arnold was the vendor; and he, as such, transferred to Brewer and Macleubin all the interest he held in the land, subject to JYicholls’s contract as vendee; and *526 also transferred to Brewer and Mackubin the debt due from Nicholls to him: to which assignment Nicholls was privy and assented. By virtue of all which Brewer and Mackubin became, in fact, the vendors to whom Jñcholls the vendee stipulated to pay the purchase money. The whole contract and relationship of vendor and vendee were thus passed over to the new parties, and therefore it was held, that the assignment with the express assent of all the original parties carried with it the incident equitable lien.(m) But, in the case under consideration, it is not pretended, that any of these assignees were ever, in any manner or form, to be considered as the vendors ; or that the interest in the land had been assigned to them subject to Armiger''s contract. These assignees merely took the c'fiose in action with the bonds as the evidence of it; and now contend, that the assignment so made to them has, in itself, given to them the equitable lien originally held by the vendor. These cases are materially different, and the one cannot in any manner be applied to sustain the position now contended for in the other.
The case of Hollingsworth v. Bowie and others, 20th June 1824, has also been relied on. But no reasons were given for the decision, and it seems to me, that the judgment of the Chancellor must have been founded, not upon the assignable nature of an equitable lien, but upon the ground, that Ray, the surety of Bowie the vendee, with Barber, the holder of the note, had a right to be substituted in the place of the vendor, (n) The case of Randall and others v. White and others, 3d August 1825, has also been spoken of. But it does not appear, that any such question, as that of the assignable nature of an equitable lien, could well have arisen in it; and I am confident, no such point was ever made in that case.
It will be proper, however, to recollect, that this land has been twice sold under the authority of this court; first, under the decree of December 1816, by which the court reserved the legal title, with an equitable lien as against the purchaser John Cross ; and secondly, under the decree of January 1818, by which the equitable estate of John Cross was sold with the reservation of an equitable lien as against the purchaser Benjamin Armiger. A doubt has been expressed whether an equitable lien can arise as an incident to the *527 sale of a mere equitable interest, (o) such as that sold to Armiger. But I can see no ground for any such distinction between the sale of a legal and an equitable estate. The lien is given to the vendor, not because of the quantity of interest, or the nature of the estate sold; but, because it would be unjust that the purchaser should hold that absolutely for which he had not paid; and because, until the whole purchase money has been paid, the contract of purchase cannot be considered as complete. Now these reasons apply as obviously, and as satisfactorily to the sale of an equitable as to the sale of a legal estate. The existence of two equitable liens upon the same real estate can be in no respect more incompatible than the contemporaneous existence of two encumbrances of any other description. They must be permitted to take according to their priorities and other equities, as usually adjusted by this court. There may be, perhaps, no case like this to be found in the English books ; but it has often, occurred in this court, that an equitable lien has been held to arise on a sale of a mere equitable estate, which lien has been enforced accordingly. (p)
There is then nothing in the authorities adduced, which shews it to have been held by this court, either that an equitable lien was in any-manner assignable unconnected with the land itself which was the subject of the contract of purchase; or that an assignment in any form of the bond or note given to secure the payment of the purchase money carries with it the equitable lien held by the vendor or assignor of such bond or note.
I will here take occasion to repeat, that, in all sales under a decree, the court itself must be considered as the vendor ; since the contract is made with the court, through the instrumentality of its trustee or agent, for the benefit of all concerned.(q) And consequently, the equitable lien, thus held by the court, may, and has always been treated as such a lien would be considered if held by a natural person; but which can in no manner whatever be affected by any act of the trustee not expressly sanctioned by the court itself. The powers and duties of a trustee are always specified in the decree, or orders by which his acts are directed. He was, in this instance, directed to collect and distribute the purchase money, by the order of the 1st of April 1818, and by the act of *528 1817, ch. 46. But it does not appear, that he was in any manner authorized to assign the bonds ; -and therefore, I do not see upon what ground he now assumes the right to appear here as a plaintiff, and téll this court of his unauthorized dealing with its business. But suppose the court could have so ordered by the provisions of the act of 1817, ch. 46, and he had been directed to assign those bonds, that assignment would not have carried with it a lien upon thej land until they were paid; or any right to resort to-him, or the court, in case they had not been paid after the assignee had used due diligence to recover the amount secured by them.(s) The acts pf Assembly giving a lien in certain cases, in connexion with the bond given by the purchaser, afford strong evidence, that it never has been considered as following any such assignment, where it was not expressly given by law.(t)
But it is urged, that a decree may be entered up by the default of some, and with the assent of the others of these defendants ; and therefore, the plaintiffs may be permitted to take such a decree as they can abide by. That might be conceded if the case itself, as shewn by the bill, was such an one as fell properly unddr the cognizance of a court of equity. That the court has jurisdiction, and that the plaintiff has a legal capacity to recover, upon the facts stated in the bill, are positions assumed; and must plainly appear, by the bill itself, in all cases, to entitle the plaintiff to a decree, in any form or upon any terms ; and to lay a sufficient foundation upon which the court may rest its judgment. Consent either tacit or express cannot give the court jurisdiction where it has none ; or entitle the plaintiff to relief, where, by his own shewing, it appears he has no capacity to receive it. Thus far, and to this purpose all courts of justice, as well of law as of equity, must see, that their judgments and decisions have a proper and legal foundation to rest upon.(u) But, divesting these plaintiffs of their unwarranted pretensions to be considered as the holders of the equitable lien of the original vendor, their case has no one single ingredient or character of equity about it. Their remedy, if any, is at law as assignees of the bonds, or upon the special contract subsisting among the parties.
Whereupon it is decreed, that the bill be dismissed with costs, &c.

 1817, ch. 46.

 Jones v. Jones, ante, 454.

 Mackreth v. Symmons, 15 Ves. 344; Walker v. Preswick, 2 Ves. 622.

 Daubigny v. Duval, 5 T. R. 606.

 Ex parte Gwynne, 12 Ves. 379.

 Mackreth v. Symmons, 15 Ves. 341.

 Mackreth v. Symmons, 15 Ves. 330; Sug. Vend. & Pur. 386; Pow. Mort. 1062.

 Co. Litt. 151, 152; 2 Blac. Com. 176.

 Green v. Hart, 1 John. Rep. 580; Jackson v. Willard, 4 John. Rep. 41; Runyan v. Mersereau, 11 John. Rep. 534; Martin v. Mowlin, 2 Burr. 978; Pow. Mort. 140, 144, 266, 429.

 Mackreth v. Symmons, 15 Ves. 339, note; Sug. Vend. Pur. 395.

 1784, ch. 58; Hughes v. Edwards, 9 Wheat. 496.

 Sug. Vend. & Pur. 396.

 White v. Williams, 1 Paige, 502; Wilson v. Graham, 5 Mun. 297.

 Mackreth v. Symmons, 15 Ves. 330.

 Ghiselin v. Ferguson, 4 H. & J. 522; White v. Williams, 1 Paige, 502.

 Bayley v. Greenleaf, 7 Wheat. 50.

 Ghiselin v. Fergusson, 4 H. & J. 522; Pinkney v. Mayo, MS. 19th April 1814, & 14th April 1821.

 Savile v. Savile, 1 P. Will. 747; Ex parte Minor, 11 Ves. 561.

 1785, ch. 72, s. 9.

 1820, ch. 191, s. 20, 21, &. 22.

 Bac. Abr. tit. Pleas & Pleadings, B. 5, 1; Dr. Bonham’s Case, 8 Co. 239; Clarke v. Conn, 1 Mun. 160.