ROBERT WELCH OF BENJAMIN, *vs.* JOHN PARRAN, ET AL.—
*December* 1844.

*P.* sold a tract of land to *T.* for $8000; of which, $1000 was secured
by the vendee's notes; $2000, due in 1841 and 1842, secured by the
vendee's notes with *W.* as endorser; and the balance of $5000, due
from 1843 to 1847, secured by the vendee's notes with *D.* and *S.* as
endorsers. The vendee died insolvent. The vendor recovered judgment,
at law, against *W.*, and then proceeded in equity to sell the land, which
he purchased in at $4000. Upon a bill, filed by *W.* to compel *P.* to
apply the $4000 in discharge of the notes *first* due, and to *restrain* his
proceedings at law upon his judgments, HELD : that the product of the
sale should be so applied, under the direction of the Court of Chancery, as
would give full security to the vendor, which might be done by enquiring
into the pecuniary condition of the sureties.

If any one of the sureties should be found unable to pay, then the vendor
should be secured by applying so much of the proceeds of sale, as would
extinguish the note thus endangered.

The vendor is entitled to full payment from the one security or the other;
or if one is insufficient, from the additional security. The endorsed notes
are to be considered as additional securities.

The vendor is not bound to wait, during the time occupied in ascertaining
the condition of the securities, but as the notes become due may enforce
them at law.

Such of the sureties as pay, may be subrogated to the rights of the vendor,
to the extent of any interest they may have in the purchase money.

Where an *injunction issues to restrain proceedings at law, upon the ground*
of credits not allowed, and the defendant admits the credits in his answer,
and consents to allow them, the injunction should be dissolved as to the
balance due.

APPEAL from the Court of Chancery.

This was an appeal from an order, dissolving an injunction.

The bill was filed by the appellant, on the 22nd April 1844,
and alleged, that about the month of December 1839, *James
Tongue,* then of *Calvert* county, now deceased, purchased of
*John Parran,* a tract of land, lying therein, called *Elkton Head
Manor,* containing about 1231 acres, for the sum of $8000;
that the said land when so purchased, was covered with large
quantities of valuable timber and wood, with the proceeds of
the sales of which, the said *Tongue* expected to pay for the
same, and in consideration of which, the said *Parran* allowed

the said *Tongue,* to pay the purchase money in many and ex-
tended instalments; that your orator knowing the premises,
and relying on the proposed execution of a deed of trust, here-
inafter mentioned, by the said *Tongue,* became a surety for
the same *Tongue,* in the execution of two notes to said *Parran,*
each for $1000, in part payment of the said purchase money;
one of them payable on the 1st January 1841, and the other,
one year thereafter; that *Henry C. Drury, of William,* also
became surety on two such notes, for the same amount, paya-
ble each for $1000, the one on the 1st January 1843, and
your orator believes, the other to be payable one year thereaf-
ter; that *John S. Skinner* also became a surety on three of
such notes, each for $1000, the times of the payment of which,
though unknown to your orator, were to expire after the pay-
ment of the other notes aforesaid.   That afterwards, about the
24th December 1841, the said *James Tongue,* executed the
deed of trust above mentioned, to *Cephas Simmons* and *Rich-
ard Estep,* conveying the said land, with the approbation of the
said *Parran,* to them, with certain other property therein spe-
cified, "in trust, for the sole object and intent, to defend and
save harmless your orator and his aforesaid co-sureties," on
account of their respective liabilities as aforesaid; that after-
wards, to wit, about the month of September last, the said
*James Tongue* departed this life, intestate, leaving *Gideon G.
Tongue* and others, his heirs at law, and that there hath been
no administration granted on his personal estate.   That after-
wards, about the 4th November last, the said *John Parran*
filed his bill of complaint in this court, against the heirs and
trustees aforesaid, of the said *James Tongue,* deceased, for the
sale of the aforesaid land, to pay the purchase money, for
which your orator and his co-sureties, were responsible as
aforesaid; whereon such proceedings were had, that on the
23rd January last, your honor passed a decree for the sale of
the said land, on the terms which the said *Parran* desired, viz:
one third of the purchase money, payable in six months, and
the balance in one and two years from the day of sale; that
accordingly, on the 9th April instant, *Jonathan Pinkney,* the

41      v.2

trustee for the sale thereof, sold the same to the said *Parran*, for the sum of $4000; that by the said proceedings, it appears, that one of the notes aforesaid, on which your orator was a surety, hath been paid, and that $300 hath been paid on the second of said notes, of which your orator was a surety, and that in addition thereto, your orator is entitled to another credit of $100.38, as of the 21st October 1842, whereby, the balance now due by your orator, is reduced to the sum of $848.40, as of the 25th inst.; that though the said *John Parran*, hath in his bill aforesaid, admitted, that your orator hath paid him the aforesaid sum of $300, on the second note above mentioned, and hath the receipt of the solicitor and attorney of the said *Parran*, for the sum of $100.38, as another payment thereon, yet the said *Parran* hath obtained judgment in the *Anne Arundel* county court, for the whole of the said second note against your orator, and hath levied execution of *fieri facias* thereon, on the property of your orator, and is about to sell the same by the sheriff of the county, at a forced sale, for cash, within a few days; that the purchase money due, as aforesaid, by the said *John Parran*, should be applied in the first place, to the extinguishment of the balance due, as aforesaid, by your orator to the said *Parran*, and should have been so made payable, as to enable your orator to have the benefit thereof; or the said *Parran* should be enjoined from proceeding to collect, by forced sale, this balance from your orator as a surety, when he has, by his own proceedings, placed the primary fund for the payment of the debt of the principal debtor, beyond the reach of your orator; all of which is contrary to equity and good conscience, and tend to the manifest injury and oppression of your orator; that at the time of the death of the said *James Tongue*, he had already cut down and ready for market, large quantities of valuable timber and wood, the proceeds of which, according to the agreement of the said *Tongue*, *Parran* and your orator, and other sureties, were to be applied to the payment of the purchase money of the said land, and to the discharge of the liabilities of your orator and other sureties, as they respectively became due;

that the said *Parran*, your orator is informed and believes, and therefore charges, is collecting the said wood and timber, disposing of the same, and refuses to allow the proceeds thereof, to be applied according to the agreement aforesaid, to the extinguishment of the said *Parran's* judgment aforesaid, against your orator, although the same will be fully sufficient for that purpose; that the said timber and wood, constitute no part of the aforesaid purchase, from the said *Pinckney*, as trustee as aforesaid, nor hath the said *Parran* any right thereto whatsoever, but that the same should be sold and accounted for, under the authority of this court. In consideration whereof, &c. prayer for an application of the payments, injunction against proceedings at law, and for general relief, &c.

With the bill, the complainant filed the proceedings in equity, by *John Parran*, for the sale of the land, to pay the balance of the purchase money.

The answer of *John Parran* alleged and admitted, that in the month of December 1839, he did sell and dispose of, to a certain *James Tongue*, now deceased, a tract of land called "*Elkton Head Manor*," at and for the sum of $8000. He also admits, that the said land, at the time of the said sale, contained a large quantity of wood, with a small proportion of timber, but denies that it was covered with large quantities of valuable timber; the wood on the said land, consisting then, as now, for the most part of pine and other descriptions of fire wood. This respondent also denies, that he allowed the said *T.*, to pay for the same in extended payments, or gave to the said *T.*, the credits on which said land was sold in consideration of an expectation, on the part of said *T.*, to pay for the said land from the proceeds of sales of the said wood and timber, and this respondent has no knowledge whatever of such expectation, if such ever existed, being known to the complainant, or of his reliance thereon, when he consented to become one of the said *T's* sureties, for a portion of the purchase money of said land; on the contrary, this respondent avers, that he, this respondent, never entered into any sort of agreement whatever, either with the said *T.*, or with the com-

plainant, or with any other person or persons whatsoever, in relation to the payment of said purchase money, or any portion thereof, with the proceeds of said wood and timber; nor was there any understanding whatever, either express or implied, at the time of said purchase, or at any other time, between this respondent and the said *T.*, or any other person in relation thereto. This respondent admits, that the said *T.*, did execute a deed of trust, of the land so purchased by him from this respondent, to *Cephas Simmons* and *Richard Estep*, for the purposes therein mentioned; but this respondent denies, that said deed of trust was executed, with his consent, or that he was in any way privy, or party to the same, or that the said deed was made with the approbation of this respondent, as the complainant charges in his said bill. This respondent further answering, says, that he admits, that the said complainant became a surety for the said *T.*, for the sum of $2000, parcel of the purchase money of said land, in two notes, each for the sum of $1000, dated the 23rd December 1839, and payable, the first of said notes, on the 1st January 1841, with interest from the 1st January 1840; and the second of said notes, payable on the 1st January 1842, with interest as aforesaid. He also admits, that *Henry C. Drury, of William*, became a surety of said *Tongue*, on two others of said notes, for said purchase money, each for the sum of $1000, of same date, and payable, the first of said notes, on 1st January 1843, as charged in said bill, and the other of said notes, payable on the 1st of January 1847, and not at the time, charged in said bill. He also admits, that a certain *John S. Skinner*, became the surety of said *T.*, in three other of said notes, for the said purchase money, the first of which became due on the 1st January 1844, each of them bearing the same date as aforesaid, and each for the sum of $1000. The second of said notes, is payable 1st January 1845, and the third is payable 1st January 1846, and not as the complainant charges in his said bill, due and payable after the payment of the other notes aforesaid. In addition to the aforesaid notes, this respondent avers, that he also took from the said *T.*, four separate notes,

each for the sum of $250, without any security whatever, dated 18th March 1840, and payable, the first, one year after date, the second, eighteen months after date, the third, two years after date, and the fourth, three years after date, all bearing interest from date, for the balance of said purchase money, all of which aforesaid recited notes, amount to the sum of $8000, the whole amount of the purchase money for said land. The complainant makes no reference whatever, in his said bill, to the last mentioned four notes of the said *T.;* but this respondent avers, that they are a portion of the notes, which were executed by the said *T.*, to him, for the aforesaid purchase money of said land. This respondent further answering, says, that the said *J. T.*, departed this life, intestate, in *Calvert* county, about the time charged in the said bill; and he also admits, that *Gideon G. Tongue, James Tongue,* and *Thomas R. Tongue,* are his only children, and sole heirs at law, and that there hath been no administration whatever granted on his personal estate. And this respondent avers, that the said *J. T.*, at the time of his death, was wholly insolvent, and unable to pay his debts, and this respondent having no other security for the payment of his aforesaid claim, except his lien on the land aforesaid, and the security afforded by the notes aforesaid, admits, that shortly after the death of the said *T.*, and about the time stated in the complainant's bill, he did file his bill of complaint, in this court, against the heirs and trustees aforesaid, for the sale of the aforesaid land, to pay the claim aforesaid, for the purchase money thereof. And that a decree was passed by this court, for the sale thereof, in the manner, and at the time charged in the complainant's bill. That *Jonathan Pinkney, esq.*, was appointed the trustee, to sell said land, and that on the 9th day of April last past, this respondent became the purchaser thereof, at the sale thereof, made by the said trustee, for the sum of $4000, he being the highest bidder for the same. That said sale was, in all respects, conducted fairly, and this respondent has complied with the terms of said sale, by executing his notes to the trustee aforesaid, with approved security, for the payment of the said

purchase money, according to the terms of the said decree, as stated in the complainant's bill. This respondent further answering, admits, that the first of the notes aforesaid, executed by the said complainant and *Tongue*, for $1000, and which became due as aforesaid, on the 1st January 1841, hath been fully paid and satisfied; but he denies that he ever has attempted, in any shape or form, to compel the said complainant, to pay him the said note a second time, or that he has refused to credit him for the same. This respondent also admits, that the sum of $300 has been paid on the second of said notes, and that in addition thereto, the complainant paid the sum of $100.38, on the 21st October 1842, on account of, and in part of said second note, but this last payment was made to the late *Somerville Pinkney*, esq.; and this respondent avers, that he informed the said complainant, before he filed his said bill of complaint, that he should have credit for both of said last mentioned sums, whenever he would come to a settlement with this respondent; and this respondent wholly denies, that he ever attempted, by a forced sale or in any other manner, to deprive the said complainant of the benefit of said credits; on the contrary, this respondent avers, &c.

This respondent, further answering, says, that in consequence of the waste and injury committed on the land sold by him to the said *Tongue*, by cutting down of wood, timber, &c., and the depreciation which has taken place since that time in the value of real estate in *Maryland*, the said land was not worth more than the price agreed to be paid by this respondent, at the sale, by the trustee aforesaid; and this respondent apprehends, that at least one-half of the original sum of $1000, for which he sold it to said *Tongue*, will be lost or put in imminent peril, unless the sum for which it was sold to this respondent, by the trustee, is applied, by this court, to the payment of that portion of the said purchase money, for which the said *Tongue* was alone responsible, to wit: the sum of $1000, with interest, and the sum of $3000, for which a certain *John S. Skinner* alone was surety, and in consequence of this apprehension on the part of this respondent, he directed

the said trustee, *Jonathan Pinkney*, at the time this respondent purchased said land to make that application, (if it were possible for him to do so,) of the said purchase money. For the sum of $1000, with the interest due thereon, this respondent took no security from the said *Tongue;* and for the sum of $3000, this respondent took as security, *John S. Skinner, esq.*, who, at that time, was living in the State, and thought to be in good circumstances, but since then, has removed from the State, and now lives in another jurisdiction, and believed to be not in a very solvent condition, as this respondent has been informed, and believes, so that your respondent insists, that equity and a faithful observance of the sanctity and integrity of contracts require, that such an application should be made of the said sum of $4000, so as aforesaid agreed to be paid by this respondent for said land, as will ensure to this respondent, the payment in full, of his original purchase money, due him as aforesaid, from the said *T.* and his sureties. Your respondent therefore insists, that his aforesaid purchase shall be applied to the payment of the $1000, due from the said *Tongue,* individually, for which he has no security; and in the second place, to the payment of that portion of the said debt of *Tongue,* on which *John S. Skinner* is surety, the security being at least, extremely doubtful. And this application of said purchase money, this respondent humbly prays may be made by this court, that being the only application of it which will enable him to realize his entire claim. That portion of this respondent's claim secured by the complainant, and the said *Drury* being, in the estimation of this respondent, entirely solvent. This respondent denies that he has, by any act of his own, not warranted or sanctioned by law and equity, placed the primary fund for the payment of the debt of the principal debtor, beyond the reach of the complainant, as surety. If, by this allegation, the complainant means, that by his filing his bill for the sale of said land, and his becoming the purchaser thereof, under a decree of this court, he has placed the land, itself, beyond the reach of the complainant, it is most true, that such is the result, but this respondent

insists, that such a result is not his act, but the act of the law, and one which the complainant could easily have prevented, by his attending the sale, and either buying the land himself, or seeing that it sold for its real value; if, in his judgment, this respondent's bid was under its real value, which is not pretended, however, by the complainant in his bill, &c.

The Chancellor, (BLAND,) upon the motion of the defendant, *Parran*, after his co-defendant had filed his answer, dissolved the injunction, and the complainant, *R. Welch*, of *Benj.*, appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS and SPENCE, J.

By RANDALL and ALEXANDER for the appellant, and
By T. F. BOWIE for the appellees.

ARCHER, J., delivered the opinion of this court.

The doctrines in reference to the application of payments, have been elaborately examined by the solicitors; but we apprehend, that so far as regards the interests of the respondent, in the proceeds of sale, refered to in the proceedings, he can have no interest in these questions.   As a vendor of the land, he had, as his security, his lien for the purchase money, and the notes given by *Tongue* with the security of the complainant, *Drury* and *Skinner* furnished additional security.   He is surely entitled to full payment from the one security, or the other; or if one is insufficient, from the other. Unless this was the object of the parties, why was the security taken?   The land may be deteriorated in the hands of the vendee, by neglect, mismanagement, or waste, or by the depression of lands in the market; to guard against such possible results, security is asked, that the vendor shall in all events be safe, and obtain his purchase money.

Now, it is asked, that the proceeds of the sale of the lands, which do not exceed more than one half of the purchase money for which the land was originally sold, should be applied either to the first note which falls due, or rateably applied

to all the notes. The consequence of such an application might be, that the vendor would lose the very object which it had been his design, and the design of the parties to secure; one half the purchase money may be insufficiently secured, and that half may be on the last notes that are due. If, therefore, the application is made to the *first* notes that are due, the vendor loses one half his purchase money, and the same will be the result, in the like circumstances, if there should be a rateable application of the proceeds among the securities.

The case before us is unlike the case of a payment made by the vendee. The property has been sold upon which the vendor had his lien, and the sale has established the fact, that the vendee's equitable right in the land, was without any value; the sale not having produced a sum sufficient to pay the vendor's equitable lien. The product of the sale should be applied under the direction of the Court of Chancery, in such a manner as would give security to the vendor, which could be done, in this case, by enquiring into the pecuniary condition of the sureties. If any one of the sureties should be found insolvent and unable to pay, then the Court of Chancery would secure the vendor, by applying so much of the proceeds of sale as would extinguish the obligation thus endangered. In no other manner could justice be done to the vendor. If instead of a sale of the land, the equitable right of the vendee had been alone sold, the case would then have stood in the same condition as if the vendee had made a payment on the land, and we should then have been called upon to determine, among the sureties, the proper and legal application of the purchase money.

Time may be occupied in ascertaining the condition of the sureties. Shall the complainant be compelled to stay his collection of the obligations given him for the purchase money, until these enquiries be made? As they become due we think he has a right to enforce their payment, and such of the sureties as pay may be subrogated to the rights of the vendor, to the extent of any interest they may be ascertained to have in the purchase money.

It may, on investigation, be ascertained, that some one or more of the sureties may be insolvent, in which event there would be nothing to which the complainant could be subrogated; and it may eventuate, that all are solvent, and able to pay; should this be the fact, then the proceeds of sale, after payment of the unsecured notes, should be rateably distributed in extinguishment of the obligations to which there are sureties.

We are of opinion, the Chancellor was right in dissolving the injunction. It appears that the credits claimed on the judgments, the vendor was willing to have made, and direction had been given to that effect. On this ground therefore, there would have been no foundation for the injunction; and as the credits have now been actually given, no injustice can be done the appellant by affirming the decree.

DECREE AFFIRMED.