(Decided 21st October, 1870.)

THOMAS CARRICO *vs.* THE FARMERS AND MERCHANTS' NATIONAL BANK OF BALTIMORE, and THEODORE WEEMS.

SARAH L. HARDESTY, Executrix of CHARLES R. HARDESTY *vs.* THE SAME.

*Extinguishment of the Vendor's Lien—Mortgage.*

Where the vendor of real estate withheld the deed until nearly the half of the purchase money was paid, and then, upon receiving the bond or note of the purchaser, with approved security for the balance, delivered to him the deed, without any agreement for preserving the vendor's lien, it must be considered as extinguished.

A mortgage of real estate is valid without attestation.

APPEALS from the Circuit Court for Charles County.

These appeals were taken from the order of the Circuit Court, dated the 2d of November, 1869, ratifying account B,

and rejecting accounts A, C and D, filed in the matter of the insolvent estate of George H. Waters. The facts of the case are very fully and clearly stated in the opinion of the Court.

The causes were argued before BARTOL, C. J., STEWART, MAULSBY, ALVEY and ROBINSON, J.

*A. B. Hagner* and *A. Randal,* for Thomas Carrico.

The order appealed from is erroneous, because the facts and evidence show that the appellant, Carrico, is to be preferred to all other claimants as the holder of the vendor's lien for the unpaid purchase money paid by him, as surety of the vendee. *Code,* Art. 16, sec. 130; *Art.* 64, sec. 3; *Art.* 48, sec. 10; *Willis vs. Wright's Trustee,* 22 *Md.,* 373; *Schwarz vs. Stein,* 29 *Md.,* 112; *McGonigal vs. Plummer,* 30 *Md.,* 422.

The claim of the bank should be rejected:

1st. Because the mortgage of Waters to Richard Isaac was not legally executed; in this, that there was no affidavit annexed, that *"the consideration"* therein expressed, "is true and *bona fide"*—the words are, that the *"condition,"* in said mortgage, "is true and *bona fide,"* &c. *Code,* Art. 24, secs. 29, 30; *Act of* 1861, (*April Session,*) ch. 76.

2d. Because Richard Isaac, at the time he obtained this mortgage from Waters, knew that the original purchase money for the land had not been paid to Peter Williams, the vendor, and took this mortgage subject to the vendor's lien, and the bank, the assignee of Richard Isaac, can be in no better condition. *Salmon vs. Clagett,* 3 *Bland,* 172; *Hudson vs. Warner,* 2 *H. & G.,* 422, 426, 428; *White & Tudor's Cases,* 71 *Law Library,* 122; *Tiernan, et al. vs. Roscaniere's Adm'rs,* 10 *G. & J.,* 220; *Johnston, et al. vs. Canby, et al.,* 29 *Md.,* 211; *Owens vs. Miller & Mayhew,* 29 *Md.,* 159; *Central Bk. vs. Copeland and Wife,* 18 *Md.,* 305; *Timmons and Wife vs. Shannon,* 19 *Md.,* 296; *Price & Bevans vs. McDonald, et al.,* 1 *Md.,* 414.

The judgments of Grinnell and Jenkins, and of the appellant, Hardesty, were properly rejected by the Circuit Court—the latter judgment not having been rendered until after the recording of the mortgage of Waters to the appellant, Carrico, and his co-sureties, to secure the payment of the purchase money, and it not appearing that the former judgment was in fact rendered before the date and recording of the said mortgage.

*John W. Mitchell* and *Frank. H. Stockett,* for the appellant, Sarah L. Hardesty.

Neither the mortgage to Isaac nor that to Carrico, had any attesting witness, and for this reason they were so defective as to give no security on the real estate to the parties to whom they were respectively executed; and the proceeds of the sale thereof should be applied to the judgment liens of Hardesty and Grinnell & Jenkins.

These mortgages were executed after the adoption of the law, as contained in the Code, in reference to such conveyances, and in accordance with the provisions there made, must these instruments be judged.    *Code, Art.* 24, *secs.* 9, 10, 28.

If, therefore, attestation be necessary to give validity to mortgages of real estate, the mortgages in question, having no attesting witness, are fatally defective, and can claim no share or portion in the proceeds of the sale of the real estate of the insolvent, as against his judgment creditors.    The utmost value which could be attached to such instruments, would be to allow them to be evidence of an indebtedness, under the hand and seal of the grantor, which would entitle the holders to the rights of general creditors, but must deprive them of a specific lien on the property embraced in the defective instruments.    *Nelson vs. Hagerstown Bank, et al.,* 27 *Md.,* 51.

If these mortgages be so defective, then the enrolment of them does not convey even *constructive notice* of their exist-

ence, or of the debts intended to be secured thereby to any subsequent *bona fide* purchaser. *Cockey vs. Milne's Lessee*, 16 *Md.*, 207.

The judgment creditors in the present case were such *bona fide* creditors—acquiring by their judgments, *subsequent liens*. This, however, is not a case to which notice or the want of notice can be applied, or can affect. It is a controversy between creditors of the same person, and to be determined according to their *legal* rights or priorities—for the judgment creditors have at least an equal equity with those claiming to hold mortgages.

These creditors have each selected his own remedy to enforce or secure his debt, and if, through a *mistake in law*, or by reason of a defective execution, either party has selected or used such an instrument or remedy as cannot effect his object without the aid of a Court of Equity, the Court will not correct the mistake by reforming the instrument to the prejudice of other creditors having equal equities. *Anderson vs. Tydings*, 8 *Md.*, 427.

The net proceeds of the sale of the real estate of the insolvent, should be appropriated to the payment in full of the judgments of Grinnell & Jenkins, and Hardesty's executrix, (that of Johns Hopkins having been already paid,) and the residue to the appellant, Carrico, under the judgment which he was compelled to pay as one of the sureties, and the mortgages should, by this Court, be declared void.

*William A. Fisher* and *Peter W. Crain*, for the Farmers and Merchants' National Bank of Baltimore.

By executing the deed to Waters, and accepting his bond with sureties, Williams gave up all right to a vendor's lien. *Brown vs. Gilman*, 4 *Wheaton*, 255; *McGonigal vs. Plummer, et al.*, 30 *Md.*, 422; *Schwarz vs. Stein*, 29 *Md.*, 112.

And there is no such proof of notice as would, in any event, be sufficient to fix the lien, as against Richard Isaac and his assignees.

The absence of an attesting witness presents no objection to the validity of the mortgage. None is required by the law of Maryland. *Wickes vs. Caulk*, 5 *H. & J.*, 41; 4 *Kent's Coms.*, 458; *Act of* 1856, *ch.* 154, *secs.* 25, 26, 27, 62, 73, 103, 104, 116, 118; *Code, Art.* 24, *secs.* 10, 15, 28, 31, 32, 33, 37, 52, 59, 60, 64, 66.

Even if the absence of a witness would prevent the operation of the instrument as a legal mortgage, it would, nevertheless, take effect as a contract for a mortgage. *Alexander vs. Ghiselin*, 5 *Gill*, 180, 185; *Johnson vs. Canby*, 29 *Md.*, 211; 4 *Kent*, 173, 437; *Wilson vs. Turpin*, 5 *Gill*, 59.

ALVEY, J., delivered the opinion of the Court.

On the 21st of May, 1859, George H. Waters contracted with Peter Williams to purchase two farms or parcels of land, situate in Charles County, for $5,500. By the terms of the contract, Waters was to pay to Williams $2,500 of the purchase money on or before the 1st of January, 1860; and as to the balance, he was to pay it in four equal annual instalments, to be secured by bond with approved security, bearing interest from the 1st of January, 1860; and, on compliance with the terms of the contract by the time mentioned, a deed was to be made by Williams to Waters for the lands thus sold.

The $2,500 were paid before the 1st of January, 1860, and for the remaining $3,000 Waters executed his bond or note, with Zachariah Swann, Samuel T. Swann and Thomas Carrico, as his sureties thereon; and upon the contract thus being complied with, Williams, on the 27th of December, 1859, executed two several deeds to Waters for the parcels of land sold, and which deeds were duly recorded, one on the 25th of January, 1860, and the other on the 10th of February, 1860.

On the 11th of August, 1860, Waters, being indebted to Richard Isaac, executed to him a mortgage of the lands purchased of Williams, and which mortgage was placed on record on the 13th of September, 1860. This mortgage is without

an attesting witness to its execution. Isaac, the mortgagee, on the 8th of March, 1861, assigned the mortgage, and the debt thereby secured, to James W. Isaac, and the latter afterwards assigned it to the Farmers and Merchants' National Bank of Baltimore. Richard Isaac also, on the 14th of June, 1861, assigned the mortgage from Waters to himself to Theodore Weems, to secure a debt due the latter, subject, of course, to the previous assignment to James W. Isaac of the same mortgage.

Waters, on the 22d of January, 1862, for the purpose of indemnifying and saving harmless his sureties, Carrico and the two Swanns, executed to them a mortgage of all his personal property, and of the lands purchased of Williams; and therein it was stipulated that the taking and accepting the mortgage by the sureties should not, in any manner, waive, release, or postpone any lien or right they might then or ever thereafter have on the said real estate, either by substitution in the vendor's stead, or in any other manner; the mortgage being only in addition to such right. This mortgage was recorded on the 28th of January, 1862; and like the mortgage from Waters to Isaac, it has no attesting witness to its execution.

In 1863, Waters, being largely indebted, applied for the benefit of the insolvent law, and was duly discharged thereunder. Afterwards, at the December term, 1865, of the Circuit Court for Charles County, Williams obtained judgment against the sureties of Waters for the unpaid purchase money; and which judgment being paid by Carrico, one of the sureties, was entered to his use.

Before the insolvent application of Waters, but subsequent to the date of the mortgage to Isaac, several judgments had been recovered against him, Waters; one by Grinnell & Jenkins, and another by the appellant, Hardesty, and both of which remain unpaid.

The assets of the insolvent estate of Waters being in Court for distribution, the auditor stated several accounts, and dis-

tributed the fund on various hypotheses as to the rights of the several parties claiming.

By account B, being the one ratified by the Court below, after deducting commissions, costs and expenses, the proceeds of the personal estate was distributed to the sureties of Waters, by virtue of their mortgage of the 22d of January, 1862; and the proceeds of the real estate embraced by the mortgage to Isaac of the 11th of August, 1860, were distributed, first, to the Farmers and Merchants' Bank, as assignee, to the extent of its claim; and the balance thereof to the claim of Theodore Weems, by virtue of the assignment to him of the 14th of June, 1861. And whether the Court below was right in ratifying this account B, and rejecting all others, constitutes the subject of review on this appeal; and the questions presented are:

1st. Whether a vendor's lien on the land purchased of Williams existed for the unpaid purchase money, and to which the sureties of Waters were entitled to be subrogated on payment of the amount due the vendor, as against the mortgage and judgment creditors of Waters? and, if not,

2d. Whether the mortgage to Isaac of the 11th of August, 1860, is void because of the want of an attesting witness to its execution?

As to the first question it is contended on the part of the appellant, Carrico, that the vendor's lien was not in any manner waived or abandoned by any thing that transpired between Williams, the vendor, and Waters, the purchaser; and that upon payment of the purchase money for which he, Carrico, was one of the sureties, the lien inures to his benefit. And if it be true, as contended, that the lien has not been waived or extinguished, the appellant is altogether correct in insisting that he is entitled to be subrogated to the right of the vendor, upon payment of the purchase money, and that by virtue of such subrogation he is entitled to precedence, as against the proceeds of the particular property on which the lien existed, of all mere judgment creditors of the vendee, and also of all his mortgage creditors who became such with notice of the fact.

of the unpaid purchase money. *Ghiselin & Worthington vs. Fergusson,* 4 *H. & J.,* 522; *Magruder vs. Peter,* 11 *G. & J.,* 219–245; *Welch vs. Parran,* 2 *Gill,* 320–329.

But has the lien of the vendor been waived or extinguished?

By the terms of the contract the sum of $2,500, part of the purchase money, was required to be paid on or before the 1st of January, 1860, which was done; and the balance was required to be paid in four equal annual instalments, and to be secured by bond with approved security. The bond or note of the purchaser was given, with security approved, and thereupon the legal title to the estate was conveyed. How do these facts affect the vendor's lien?

It has been decided in two recent cases in this Court, (*Schwarz vs. Stein,* 29 *Md.,* 112, and *McGonigal vs. Plummer,* 30 *Md.,* 422,) that when the legal title has been conveyed to the vendee, and he has given his note with the responsibility of a third person thereon as security for the unpaid purchase money, the lien will be considered as waived, unless it be made plainly to appear that it was the intention of the parties that it should be retained; and that, in such case, the *onus* of showing the intention to preserve the lien rests with the vendor, or those claiming in his stead. And this, we think, is entirely consistent with the previous decisions of the Court of Appeals of this State, and is certainly in accordance with the great preponderance of opinion of the other American Courts upon this subject.

In the case of *Gilman vs. Brown,* 1 *Mason's Rep.,* 212, where the legal title had been conveyed as in this case, Judge STORY, in discussing fully the doctrine of the vendor's lien, and the circumstances that give rise to the presumption of its waiver, said: "Looking to the principle, upon which the original doctrine of lien is established, I have no hesitation to declare, that, taking the security of a third person for the purchase money, ought to be held a complete waiver of any lien upon the land; and that, in a case standing upon such a fact, it would be very difficult to bring my mind to a different con-

clusion. At all events, it is *prima facie* evidence of a waiver; and the *onus* is on the vendor to prove, by the most cogent and irresistible circumstances, that it ought not to have that effect." Judge STORY's judgment being against the existence of the lien in that case, it was taken to the Supreme Court of the United States for review, (4 *Wheaton*, 255,) and that Court affirmed the judgment, maintaining through Chief Justice MARSHALL, its organ, that the vendor's lien for unpaid purchase money is waived by any act of the parties showing that the lien is not intended to be relied on, as by taking separate security; and that where the deed is withheld until the first payment is made, and then delivered to the vendee, the vendor taking and relying upon the negotiable notes of the purchaser endorsed by third persons, for the residue of the purchase money, this is such separate security as will discharge the lien.

In accordance with this decision a large number of cases in the various State Courts have been ruled, and it may now be justly regarded as announcing the settled law in this country, with but few exceptions. Hence, in the note of the American edition to the case of *Mackreth vs. Symmons*, 1 *Leading Cases in Equity, top page* 364, 365, (3d *edition*,) it is said: "In regard to the effect upon this equitable lien, of the vendor's taking a security, the American cases agree in establishing and applying the following simple and satisfactory rule: that the implied lien will be sustained wherever the vendor has taken the personal security of the vendee *only*, by whatever kind of instrument it be manifested, and therefore that any bond, note or covenant, given by the vendee *alone* will be considered as intended only to countervail the receipt for the purchase money contained in the deed, or to show the time and manner in which the payment is to be made, unless there is an express agreement between the parties to waive the equitable lien; and, on the other hand, that the lien will be considered as waived whenever any distinct and independent security is taken, whether by mortgage of other land, or pledge

of goods, or *personal responsibility of a third person*, and also when a security is taken upon the land, either for the whole or a part of the unpaid purchase money; *unless there is an express agreement that the implied lien shall be retained.*" And as maintaining the propositions stated, a large number of cases are cited, and the first among them is the case of *Gilman vs. Brown*.

Where the legal estate is retained by the vendor until the full payment of the purchase money, as was done by the express terms of the contract in the case of *Magruder vs. Peter*, 11 *Gill & John.*, 217, the taking a bond or note of the purchaser, with the individual security of a third person thereon, will not operate a waiver of the lien, because the fact of withholding the conveyance of the estate until the purchase money is paid, is evidence clear and indubitable that the bond or note taken is not the only security relied on for ultimate payment. But, in this case, the deed was withheld until the first payment was made, amounting to nearly half of the whole purchase money, and then, upon receiving the bond or note of the purchaser for the balance, with security approved by the vendor, the latter delivered the deed conveying the estate, in accordance with the terms of the contract, without any agreement whatever for preserving the lien. It is, in this respect, quite analogous to the case of *Gilman vs. Brown*, and is not at all distinguishable, in principle, from the cases of *Schwarz vs. Stein* and *McGonigal vs. Plummer*, before referred to; and those cases must control this. We are of opinion, therefore, the lien does not exist.

Then, as to the second question, that in regard to the necessity of an attesting witness to the mortgage. By the *Code, Art.* 24, *sec.* 28, it is provided that "deeds of mortgage, conveying any use, estate or interest in land, shall be *executed,* acknowledged and recorded as absolute deeds of the same;" and by the 10*th section* of the same Article, it is provided that "every deed conveying real estate, shall be signed and sealed by the grantor or bargainor, and attested by at least one witness."

By *section* 52 of the same Article, it is declared that certain prescribed forms shall be sufficient to convey real or personal

property; and all the forms prescribed for conveying real estate, otherwise than by mortgage, or an assignment or release of mortgage, are given with a test, and initial letters to indicate the place and necessity for attestation. But in the form prescribed for a mortgage of real estate, no such indication is given, nor do we think any attestation is required to render a mortgage of real estate valid. It is not that deeds of mortgage are to be signed and sealed by the mortgagor, and attested by at least one witness, as in the case of absolute deeds, but they shall be *executed*, acknowledged and recorded as absolute deeds. Now what does the term "execute" mean, as applied to the making of a deed? It does not mean the attestation of the deed, for that is no part of its execution. The execution consists of acts of the party making the deed, and who is to be affected by it; but attestation is a different thing, being the act of a third party, having no other relation to the deed than that of a mere witness to its execution. "The last requisite," says BLACKSTONE, "to the validity of a deed is the attestation, or execution of it *in the presence of witnesses;* though this is necessary, rather for preserving the evidence, than for constituting the essence of the deed." 2 *Com.* 307. It is not essential to the validity of a deed, unless made so by Statute, that it should be executed in the presence of witnesses. *Com. Dig. Fait, B.* 4; *Wickes vs. Caulk,* 5 *Har. & John.,* 36. And as no provision of the Code requires mortgages to be so executed, we cannot do otherwise than declare the one in question to be valid and effectual; the other objection to it proving to be unfounded in fact.

Having thus disposed of the two main questions of the case, it results that the other questions certified to this Court by the Court below are unimportant, and therefore unnecessary to be passed upon; and the order ratifying account B, and rejecting all other accounts stated by the auditor, will consequently be affirmed.

*Order affirmed.*

(Decided 1st July, 1870.)