SARAH W. OREM, Executrix of NICHOLAS OREM, deceased *vs.* WILLIAM L. WRIGHTSON and JOHN F. L. WRIGHTSON.

*Priority of the State in Payment from the Assets of a deceased Debtor—Subrogation of the Sureties of such Debtor to the State's Priority as a Preferred Creditor—The Doctrine of Subrogation or Substitution.*

The State has a right of priority, to be first paid, as a preferred creditor, out of the assets in the hands of the administrator of its deceased debtor, except only where some antecedent lien stands in the way.

Apart from the effect and requisites of an actual assignment, under the Act of Assembly of the State's judgment, the appellees as sureties of the State's deceased debtor, were equitably entitled by their payment to the State of the debt due by the deceased, to be subrogated to the priority of the State, and by virtue of such subrogation the debt which they had paid the State, should be first paid them, as a preferred debt in the distribution of the assets in the hands of the deceased debtor's administrator.

It is not necessary to enquire how, or in what manner the State's right to rank as a preferred creditor is derived, whether it is a prerogative right derived from the common law, or whether it has been conferred by statute. Equity, in applying the doctrine of subrogative, looks not to form, but to the essence of the transaction. It looks to the debt which is to be paid, not to the hand which may happen to hold it, and will see that the fund charged with its payment shall be so applied.

The doctrine of subrogation, or substitution, is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien and security to which the creditor could have resorted for the payment of his debt.

APPEAL from the Orphans' Court for Talbot County.

This appeal was taken by a creditor from an order of the Orphans' Court for Talbot County, passed in the mat-

ter of the estate of Arthur W. Leeke, deceased. And thereupon the respective counsel for the appellant and appellees filed the following agreed statement of facts:

It is agreed in this case, that Arthur W. Leeke, was, on the 6th of April, in the year 1870, duly appointed by the Commissioners of Talbot County, Collector of State Taxes for said county for that year, and that, as such collector, he did, on the 7th of May following, execute his bond to the State of Maryland, with John F. L. Wrightson and William L. Wrightson, as his securities, conditioned for the faithful execution of the duties of said office, and for the payment to the Treasurer of the State of Maryland, of the several sums of money which he might receive for said State; which bond was duly approved, as required by law. That the said Arthur W. Leeke thereupon assumed upon himself the duties of the said office of Collector of State Taxes, and proceeded to collect, and did collect a large amount of said taxes, but before paying to the Treasurer of the State the whole amount so collected by him, departed this life, largely indebted to the State of Maryland, on account of said taxes so collected by him; that letters of administration upon his personal estate were thereafter granted by the Orphans' Court for Talbot County, to Henry B. Leeke, who proceeded to administer said estate, but failing to pay the amount of taxes due to the said State, or any part thereof, suits were instituted by the said State upon said bond, in the Circuit Court for Talbot County, for the recovery of the same, against the said Henry B. Leeke, as administrator, and also against the said John F. L. Wrightson and William L. Wrightson, the sureties therein, and at the May Term of said Court, in the year 1875, judgments were rendered against the said administrator and against said sureties, for the penalty of the said bond, to be released on the payment of the sum of thirteen hundred and ninety-four dollars and sixty-nine cents, with interest thereon from the 25th of May, 1875,

till paid, and costs. And the said judgment against the said sureties, less an allowance of one hundred and fifty-nine dollars and seventeen cents, for insolvencies, amounting, principal, interest and costs, to the sum of thirteen hundred and ninety-two dollars and eighty-one cents, was, on the 6th of January, in the year 1877, fully paid and satisfied by the said John F. L. Wrightson and William L. Wrightson, to Charles H. Gibson, State's Attorney for Talbot County, who gave his receipts therefor, endorsed on copies of said judgment, and paid the same to the Treasurer of the State of Maryland, upon warrants of the Comptroller, in the name of Arthur W. Leeke; that the said Henry B. Leeke, without rendering an account of his administration of the personal estate of the said Arthur W. Leeke, and without paying said judgments, or any part thereof, either to the State or to the said sureties, abandoned his residence in the State of Maryland, and removed to some other State; and thereupon the Orphans' Court for Talbot County, revoked the letters of administration so as aforesaid granted to him, and granted to H. Clay Dodson, of Talbot county, letters of administration *d. b. n.*, upon said estate, who duly qualified as such administrator, and assumed upon himself the duties of said office.

It is further agreed, that certified copies of said judgments against the said sureties, with the receipts of the said Charles H. Gibson, State's Attorney, endorsed thereon, were duly filed by said sureties, in the Registry of the Orphans' Court for Talbot County, against the personal estate of the said Arthur W. Leeke, claiming, in virtue of the payment thereof by them, to be subrogated to such priority of payment out of the assets of said estate, as the State of Maryland would have been entitled to, if the said judgments had not have been paid by them, and remained still unsatisfied.

That the said H. Clay Dodson, administrator as aforesaid, rendered a final account of administration of said

estate, from which it appeared that there remained a balance to the credit of said estate of twelve hundred and ninety-two dollars and seventy-three cents, of which balance he made a dividend, distributing the same rateably among all the creditors of Arthur W. Leeke, including said sureties, and presented the same for the approval of the said Orphans' Court, but the said Court, upon the motion of said sureties, rejected the said dividend, and ordered, (there being no other claims of preference against said estate,) the said balance to be applied to said judgment of the State, against the said sureties, so paid by them as aforesaid, pursuant to which order, the said administrator *d. b. n.*, presented on the 11th of June, 1878, to the said Orphans' Court, an account, applying the whole of said balance to said judgment, which said account was, on the same day, approved and passed by the said Court, and from the order approving and passing the same, this appeal is taken.    The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, ALVEY and ROBINSON, J.

*Joseph B. Seth*, for the appellant.

The judgment against the administrator of Leeke, *as a judgment*, conferred no right of priority on the State, and *a fortiori* conferred none on the sureties of Leeke; judgment was not recovered, nor was suit instituted against A. W. Leeke, the principal in the bond, during his life-time, and it is well settled that judgments against executors and administrators, give no rights of priority in the distribution of an estate under our testamentary laws.    If the judgment had not been paid, the State would have had a priority; but the assignment thereof does not subrogate the sureties to the same rights.

Prior to the Act of 1864, ch. 243, a surety paying a judgment to the State could not have the judgment

assigned for want of authority in the State's agents to make the assignment. The right to assign being conferred by statute, the provisions of the statute must be strictly complied with. *McKnew vs. Duval,* 45 *Md.,* 508; *Peacock vs. Pembroke,* 8 *Md.,* 348.

The Act only authorizes the assignment of judgments that have been recovered against the *principal debtor,* and no such judgment exists or ever existed in this case; but this is a judgment against the administrator, and there is no authority in the State's agents to assign such a judgment. *McKnew vs. Duval,* 45 *Md.,* 508.

In ordinary cases, upon a surety paying the debt, he is entitled to an assignment of all *collaterals,* but not to an assignment of the bond, for by payment the debt is extinguished. 1 *Story's Equity, sec.* 499; *Carroll vs. Bowie,* 7 *Gill,* 34; *Copie vs. Middleton,* 1 *Turner & Russell,* 229; *Hodgdon vs. Shaw,* 3 *Mylne & Keene,* 189; *Jones vs. Davids,* 4 *Russell,* 277.

Now what were the collaterals or rights which gave the State a priority? It is unquestioned that if this debt had not been paid by the sureties, the State would have been entitled to a priority in the distribution, but this was not in virtue of any lien or other right conferred by the judgment, but the right exists where there is no judgment, and is a prerogative right. It is a personal privilege attached to the sovereign, and comes into existence when his rights, and the rights of private persons are brought into conflict; it confers no lien, but is only a *rule* in the *distribution* of the property of the debtor—requiring the debt due the State to be first paid—where the individual creditor has no antecedent lien. It is a personal right in the State given for public policy, to enable the State to collect the public revenue, for the public good. *Conrad vs. Ins. Co.,* 1 *Peters,* 439; *Murray vs. Redley's Adm'r,* 3 *H. & McH.,* 171; *State vs. Bank of Md.,* 6 *G. & J.,* 205; *State vs. Mayor & C. C.,* 10 *Md.,* 515; *Smith vs. State,* 5 *Gill,* 45.

But where, as in this case, the public revenue has been collected by the payment of the debt, the reason fails. Why should these sureties on the bond to the State have preference over sureties on other bonds, such as trustee bonds, if such exist? There is no rule of equity in their favor. Equity would distribute the fund equally among all the creditors. These sureties, like other accommodation endorsers or guarantors, undertook for the faithful discharge of the duties of their principal, and a strict accounting by him, and when they became sureties for him, it is to be supposed they knew that if the State had to sue for and recover judgment for any balance that might be due, upon paying such judgment, they would, by virtue of the Act of 1864, be entitled to all the remedies conferred by the judgment, as a judgment, *i. e.*, the right of execution, or of any lien on real or other estate, but to nothing more. This gave them an equal chance with his other creditors, and in the event of his insolvency during life the most vigilant of his creditors, those that first acquired liens, would have had the advantage. Why should the appellees be benefited by the death of their principal? His death prevented other creditors acquiring liens. Why not the same with the appellees? When they have secured a proper assignment of the judgment they will be entitled to all the rights and privileges which it, as a judgment, conferred on the State, but nothing more. The State was not a party to the distribution in the Orphans' Court, and as the right of priority is only a *rule in distribution*, it was not brought into existence. *Smith vs. The State*, 5 *Gill*, 45.

A surety is not on payment of the debt of his principal *ipso facto*, subrogated to the creditor's rights; his remedy is not *prima facie* on the bond, but for money paid. *Rittenhouse vs. Levering*, 6 *Watts & S.*, 384; *Foster vs. Trustee, &c.*, 3 *Ala.*, 302; *Dennis vs. Rider*, 2 *McLean*, 415; *McLean vs. Lafayette Bank*, 3 *Ibid.*, 587.

*Philip F. Thomas*, for the appellees.

The appellees contend that the judgment of the Court below should be affirmed, because the State, being entitled to priority of payment, the sureties in the bond of Leeke, as collector of State taxes, in which character the indebtedness accrued, having paid the State's claim, were entitled to be subrogated to all the rights and priorities of the State, and to be repaid out of the assets of Leeke in the hands of his administrator *de bonis non*, in preference to all other creditors having no previous liens.

The claim for indemnity by the surety against the principal debtor, like the right to contribution among co-sureties, does not rest upon contract, but is founded upon a principle of natural justice and equity and prevails as well at law as in equity. It arises from the moment when the relation of principal and surety is entered into, and as soon as the surety has paid the debt, he is subrogated to all the rights of the creditor and entitled to enforce all the liens, priorities and means of payment of the creditor as against the principal debtor. "Payment by one who stands in the relation of a surety, although it may extinguish the remedy, or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety. As between them, it is in the nature of a purchase by the surety from the debtor; it operates an assignment in equity of the debt and of all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities; and in favor of the surety, the debt and all its obligations and incidents are considered as still subsisting."

The principle of subrogation has been recognized in the Federal Courts and by all the State Courts of this country, Maryland included, except by the Courts of Alabama, Vermont and North Carolina, and it is universally settled "that although the security or lien be extinguished at law, yet for the benefit of the surety, by whose money or

property the creditor has been satisfied, it continues equitably in force." *Norwood vs. Norwood*, 2 *H. & J.*, 238; *Sotheren vs. Reed*, 4 *H. & J.*, 307; *Merryman vs. The State*, 5 *H. & J.*, 423, 427; *Hollingsworth vs. Floyd*, 2 *H. & G.*, 88, 91; *Watkins vs. Worthington*, 2 *Bl.*, 509, 529; *Brandt on Suretyship and Guaranty*, p. 368, sec. 273, and authorities cited in note 1, p. 369; *Dering vs. Earl of Winchelsea, Leading Cases in Equity*, (*White and Tudor*,) 120, and particularly to pp. 134 to 142, inclusive, where the doctrine of subrogation is fully and ably reviewed and all the American authorities cited.

BRENT, J., delivered the opinion of the Court.

The appellees were sureties upon the bond of Arthur W. Leeke, Collector of State Taxes for Talbot County. Leeke proceeded to collect a large amount of said taxes, but died before paying into the treasury of the State the whole amount so collected by him. For this balance, due at the time of his death, suit was afterwards brought, upon the bond, by the State against the appellees, and judgment obtained. Having paid their respective portions of the judgment, they now seek to recover the sums of money so paid from the personal estate of Leeke, the principal debtor, in the hands of his administrator. This being insufficient to pay all the debts due, the ground is taken that this is a preferred debt, and as such must take priority in the distribution. The record shows, that there is no other claim of preference against the property.

The Orphans' Court of Talbot County in June, 1878, upon the final distribution of this estate passed an order allowing a priority to this claim of the appellees, and from that order the present appeal is taken by one of the other creditors.

Appended to the agreed statement of facts in the record is the following:

"It is further agreed, that in the foregoing proceedings, the questions submitted to the Orphans' Court, and upon

which their order of the 11th of June, 1878, was passed, were:

"First. Whether under the facts of this case, the State of Maryland was entitled to priority of payment of its claim, out of the assets of the estate of Arthur W. Leeke, deceased; and if so, whether, secondly, the sureties in Leeke's bond, as collector of State taxes, having paid the said claim, were entitled to be subrogated to the State's priority? Both of these questions were decided affirmatively by the Orphans' Court, and upon this appeal, the same questions will be submitted to the Court of Appeals."

The priority of the State in the payment of its claim against a debtor is not a new question. It was recognized and enforced as early as 1787 in the case of *The State vs. Rogers and Wife*, 2 *H. & McH.*, 198; and again in 1793 in the case of *Murray vs. Ridley's Administratrix*, 3 *H. & McH.*, 171, where one of the questions presented in the distribution among creditors, of the estate of the intestate Ridley, was the priority of the State as a preferred creditor. The same question also arose in *Contee vs. Chew's Executor*, 1 *H. & J.*, 417, and the right of the State to be first paid out of the assets of its deceased debtor was again announced. In these cases there was no opinion delivered, giving the grounds of the decision. But in the case of *The State af Maryland vs. The Bank of Maryland*, 6 *G. & J.*, 205, argued by the ablest members of the bar, the question was again presented, and is treated at considerable length in the opinion of Court, delivered by Chief Judge BUCHANAN. The conclusion, reached by the Court, is in favor of the State's right of *priority*, as a prerogative right derived from the common law, entitling her to be first paid, except only where some antecedent lien stands in the way. This may now be well considered as the settled law in this State.

In the present case, there being no liens in the way, the State was clearly entitled to be first paid out of the assets in the hands of the administrator of Leeke.

The next question to be examined is, to what rights, if any, the appellees as sureties of Leeke are subrogated by their payment to the State of the debt due by him, at the time of his death, as principal debtor.

The doctrine of subrogation, or substitution as it is also termed, is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of the creditor, and gives him every right, lien, and security, to which the creditor could have resorted for the payment of his debt. As said in the annotation to the case of *Dering vs. Earl of Winchelsea,* 1 *Leading Cases in Eq.*, 60 (*m,*) "Payment by one who stands in the relation of a surety, although it may extinguish the remedy or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety. As between them it is in the nature of a purchase by the surety from the creditor; it operates an assignment in equity of the debt and all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities; and, in favor of the surety, the debt and all its obligations and incidents, are considered as still subsisting." A large number of American cases are cited, and they sustain fully these general principles.

The doctrine announced in *Copis vs. Middleton,* 1 *Tur. & Rus.*, 224, to the effect that equity will not subrogate the surety in cases where payment extinguishes the security at law, has not been generally followed in this country. While it has been adopted in cases in Alabama and North Carolina, it seems that the Courts in the other. States, where the question has arisen, and the Supreme Court of the United States, (12 *Wheaton*, 598,) have held the opposite view. The annotators in 1 *Leading Cases in Equity*, 88, referring to the cases in the United States say, that, with the exception of the cases in the two States

above named, "it appears to be universally and firmly settled, that although the surety or lien be extinguished at law, yet for the benefit of the surety, by whose money or property the creditor has been satisfied, it continues in full force." This rule is equitable and just, and supported as it is by the great weight of authority in this country we feel justified in adopting it. See *Hollingsworth vs. Floyd*, 2 *H. & G.*, 90; *Sotheren vs. Reed*, 4 *H. & J.*, 309; *Creager vs. Brengle*, 5 *H. & J.*, 240; *Merryman vs. State*, *Id.*, 427.

The question of the subrogation of the surety to the *priority* of the creditor, by the payment of the debt to him, has arisen, as in the present case, most frequently in regard to the distribution among creditors of assets in the hands of an executor or administrator. In *Powell's Ex'rs vs White, and others*, 11 *Leigh*, 309, after a very able and extended review of the authorities, especially the English, a surety upon a bond, who had paid it off after the death of the principal debtor, was held to be subrogated to the same right of priority in the distribution of assets in the hands of the executor, which the law of the State conferred upon bond creditors.

In *Lidderdale vs. Robinson*, 2 *Brockenborough, C. C. of U. S. Reps.*, 159, the doctrine of subrogation arose, and the extent to which a surety, who has paid the debt, is subrogated to the priority of the creditor, was presented and considered. Chief Justice MARSHALL, in his opinion in the case, adopts the Virginia decisions as establishing "the principle incontrovertibly, that the surety who has paid a debt, stands, as respects his claim on the principal or his estate, *to every purpose in the place of the creditor.*" He refers to the three cases in 4 *Johns. Ch. Reps.*, 123, 530, and 545, as recognizing the same principle, and to the case in 4 *Desaussure*, 44. He then proceeds to say: "The principle that a person, who has paid money as surety or on account of another, shall be substituted in the place of

the creditor, seems to be familiar in England.   In 3 *P. Wms.*, 400, it is laid down by the Chancellor, that an executor, who has paid beyond the assets which have come to his hands, shall rank as the creditor whose debt he has paid." 1 *Atk.*, 134; *Ex parte Crisp*, 2 *Ves. Sen.*, 302, and 11 *Ves. Jr.*, 22, are also cited in the opinion.   In the case, the learned Chief Justice not only maintains the right of a surety to be subrogated to the priority of the creditor against the principal debtor, but extends the doctrine against a co-surety.

This case was carried to the Supreme Court of the United States upon a certified division of opinion between the Chief Justice and Judge TUCKER, who sat with him in the Circuit Court, and is reported in *Lidderdale vs. Robinson*, 12 *Wheaton*, 594.   The Supreme Court sustained the views of the Chief Justice, and in the conclusion of their opinion on page 598, they say; "That this, then, is the settled law of the State, in which this contract and cause originated, cannot be doubted.   But we feel no inclination to place our decision upon that restricted ground, since *we are well satisfied with its correctness on general principle,* and on authorities of great respectability in other States."   See also *Watts, and others vs. Kinney, et ux.*, 3 *Leigh*, 272; *Cheeseborough vs. Willard*, 1 *John. Chan. Reps.*, 413; *Croft vs. Moore*, 9 *Watts*, 409; *Himes vs. Keller*, 3 *Watts & Sarg.*, 404; *Carrico vs. Farmers and Merchants' National Bank, &c.*, 33 *Md.*, 241, and cases there cited.

We might cite a very large number of other authorities upon this point, but have not considered it necessary. We think the doctrine is well established by a decided preponderance of the cases, that a surety, who has paid the debt of his principal obligor, is subrogated in equity by the act of payment, not only to the securities of the creditor, but to all his rights of priority.   If therefore the creditor could have rightfully claimed a preference in

the distribution of assets, the same preference will be upheld by way of subrogation for the benefit of the surety.

Is a different rule to be applied where the State is the creditor? We can see no reason why it should be. It is not necessary to inquire how, or in what manner the State's right to rank as a preferred creditor is derived, whether it is a prerogative right derived from the common law, or whether it has been conferred by statute. As is said in some of the cases to which we have referred, equity in applying the doctrine of subrogation looks not to form, but to the substance and essence of the transaction. It looks to the *debt* which is to be paid, and not to the *hand* which may happen to hold it, and will see that the fund charged with its payment shall be so applied. 3 *Leigh*, 295.

In the present case, the debt of the collector, Leeke, was due to the State at the time of his death. It was a charge against him as the principal debtor, and upon the assets left by him. The latter constituted the fund out of which it was to be paid as a preferred debt. And if equity does not regard the hand which holds the debt, and will see that the fund charged with its payment shall be so applied, what difference can logically result whether the creditor, to whom the surety has made payment, is the State or an individual.

While this view of the law will do no wrong to any one, it will add facilities in securing and collecting the revenue of the State. If sureties know that they can be subrogated to the priority of the State, less apprehension will be felt in joining in the bonds of collectors, and less delay in payment by solvent sureties, other creditors are not injured, for if the State has the first claim upon the fund, it does them no wrong whether this claim is enforced by the State, or by those standing in its stead.

We have not referred to the agreement in regard to the assignment, under the Act of Assembly, of judgments

obtained by the State.   Our decision rests entirely upon the doctrine of subrogation, and outside of any consideration of the effect and requisites of an *actual* assignment.

Upon the whole, we think the sureties in this case are equitably entitled to be subrogated to the priority of the State, and that by virtue of such subrogation the debt, which they have paid to the State, should be first paid to them in the distribution of the assets in the hands of Leeke's administrator.

The order of the Orphans' Court, appealed from, will therefore be affirmed.

*Order of Orphans' Court affirmed, and*
*the costs to be paid out of the fund.*